Perry Shorris, Nautilus Insurance Company Hey Police, the Court. My name is Perry Shorris and I represent Nautilus in this action. This case is an insurance dispute that comes down to really a basic central question and that is does an exception to an exclusion in this case nullify the effect or part of the effect of a separate exclusion. In this case we have two endorsements that are at play and one is the employee exclusion, the other is the contractor subcontracted work endorsement. In the absence of the contractor subcontracted work endorsement there would be no dispute here that the employee exclusion applies. That's been conceded by my opponents. That was essentially, at least implicitly, conceded by the District Court. The question here is the section D of the contractor subcontracted work endorsement has an exclusion and that exclusion has an exception in which the exclusion is for bodily injury, quote unquote, arising out of work performed by any contractors or subcontractors. Here's the exception, unless such work is being performed specifically and solely for you. Nothing in section D states that it's creating coverage or recognizing coverage for bodily injury to contractors or subcontractors. It's for bodily injury arising out of the work of contractors or subcontractors. So the issue is... It's a pretty broad term, right? Arising out of? Yeah. Sure. And could, taken by itself, apply to employees, right? Yes, absolutely. But the question then is if you have an exception, which I think we all agree that the effect of an exception to an exclusion is to preserve certain coverage, does that have an impact on a separate exclusion? The Illinois Supreme Court has said specifically that an exception to an exclusion, its effect is basically limited to that exclusion. It does not affect a separate exclusion. You're relying on brochure? Brochure, correct. And the question here also is what is the conflict between the two provisions? Obviously, any time you've got coverage under one provision of a policy and then an exclusion, there's going to be a conflict to the extent that the exclusion is going to chip away at the scope of coverage. But it's very clear under Illinois law that that is permissible to put an exclusion in a policy that chips away at the scope of coverage. The question here is, are these so irreconcilably, so much in conflict, that essentially you've got one provision providing coverage and the other taking away that precise coverage? Now, if the contractor, subcontractor work endorsement had said something to the effect of, except that we will provide coverage for bodily injury to an employee of contractors and subcontractors, then we might have a problem because that's directly and explicitly addressing the same issue that's addressed in the employee exclusion. Here we've got two provisions that are different in scope. Mr. Shorris, let me ask you to explain to me, this contractor endorsement nearly doubled the premium on this policy, right? Correct. Okay, so what coverage did it add? Well, the ultimate purpose of the endorsement as a whole I don't think was necessarily to add coverage. Well, it doubles the price of the coverage. Am I misreading that, the way the premium is set up? I'm looking at page 260 of this appendix, where the policy is $1,900 for the basic policy and then the contractor endorsement is nearly $1,800. So what coverage were the owners buying for doubling the premium? Well, you're buying coverage that would cover the work, that would cover injuries from work provided that arose out of, I'm sorry, for injuries that arose out of work performed by contractors and subcontractors. That wasn't already covered by comprehensive liability insurance for your construction project? Probably, but, you know. Look, I'll just vent for a moment, okay? Sure. The thing that's frustrating about this case from both sides is that this comes down to economics of underwriting, the risk, right? And we have at least not been directed to any relevant information about the pricing of the risks here. Now, we can toss a coin in terms of trying to just stare at the words and see what's the most rational interpretation of this, but this ought to be a business proposition. So I'm trying to understand what coverage somebody got, and then the follow-up question in essence is, is that a reasonable price or an unreasonable premium for a six-month policy that would extend to an owner's liability for injuries to the employees of subcontractors? And do we have any evidence in the record that gives us any guidance about those issues? Well, there was no portion of the record that dealt with the underwriting as far as how that premium was determined. I would add that the interpretation of the policy is governed by the words that are used, not necessarily the premium. We also try to do that with some at least tenuous connection to the economics of the deal so that we don't startle either side unfairly. That's why I'm trying to understand, first, what the insured got for the premium, and second, do you sell separate policies for owner's liability for contractor and subcontractor employee injuries? Well, you know, the premium was determined by the premium plus I'm trying to find, what was the page ID? A260. Maybe I'm misreading it, but that is the page, but it's the declarations page. Okay. Right, so the declarations page is basing it on the premium classification of contractor subcontracted work, which means that there is coverage for bodily injury, property damage, personal advertising injury that arises out of contractors and subcontractors' work because it's determined in this case that JRJ was doing construction work and that there would be a charge for claims arising out of construction projects in which there would be contractors and subcontractors. Exactly. So the issue is not so much that the premium wasn't related to this particular exception in Section D. It was related to the fact that they were doing construction work. So I don't believe that the premium in this case is particularly helpful in terms of interpreting the particular passage that's in the contractor subcontracted work endorsement. Do you sell separate coverage for employee injuries? I don't know whether there's a separate form for that or whether that's something or whether there is a negotiation that would be where there would not be the endorsement for the employee exclusion. Frankly, I would think that is kind of a critical issue if you're trying to do insurance coverage for a construction project. Well, if you don't have the endorsement, the employee exclusion endorsement, then it would be covered for subcontractors' employees. And so obviously there can be negotiations on whether or not that endorsement is made part of policy. But obviously in this case there was an agreement that that was a part of the policy. And the employee exclusion is very clear in applying to the employees of subcontractors who suffer bodily injury. So, sure, there is an opportunity to negotiate a different policy that doesn't have this endorsement, but this endorsement was included. And the contractor subcontractor work endorsement does nothing to negate that. Again, the exception in Section D is much broader than the scope of the employee exclusion, so there's still meaningful coverage even when you consider the contractor subcontractor work endorsement because there's still coverage for bodily injury to non-employees. Looking at the contractor subcontractor work provision, what language there expands coverage? It doesn't expand coverage. And I think everybody in this case up until now has agreed it doesn't expand coverage. All it does is that exception preserves coverage within the context of that exclusion that's in Section D. Okay. Then I'm confused as to why the extra premium. Well, it's not the endorsement that expands coverage. It's not the endorsement that affects the premium.  It doesn't expand the coverage. What the premium reflects that there's a certain calculation that there's a risk that is due to contractors and subcontractor work. It's not expanded coverage. It's just a premium calculation based on the risk. And the endorsement is not intended to expand coverage. So where do the parties recognize, wait a minute, this isn't just an operating building, this is a construction site, and so we've got to charge extra for it? That would be in the declarations and the classifications, the premium classifications. But, again, that's not creating coverage. That's an explanation of the types of risks upon which premiums are calculated. Okay. Thank you. So the endorsement is really dealing mostly with issues about whether or not the contractors and subcontractors are adequately insured. But with respect to the particular provision in Section D, it does not expand or create coverage. At most, it simply limits the scope of that exclusion by saying that it doesn't apply if those subcontractors and contractors were working solely and specifically for the named insured. So, again, there is no irreconcilable conflict between these two endorsements, and so they should be construed as written. It's unambiguous, but for the contractor-subcontractor work endorsement, there's no dispute that the employee exclusion is unambiguous. So there's no reason for doing what the district court did, which was essentially read that exclusion out of the policy, at least with respect to subcontractors' employees. Want to save some time? Yeah, I will save some time before we go. Thank you. Mr. Linden? Good morning, Justices. My name is Richard Linden. I represent the appellees in this case. One thing I've struggled with, and I spent a lot of time just trying to figure out, what did my clients get for almost $1,800? It almost doubled the premium, $1,785. And it's in the record where my client went and has understood extensive construction work is going to be done. My client sought insurance to cover any bodily injuries for any type of, including the subcontractors or contractors. When you have a vacant building, one of the number one risks is going to be an injury to a worker on the job. And if you look at Nautilus' exclusion, that has been upheld by many courts, and no court has addressed, that I know of, the interplay between the contractor, subcontractor exclusion, along with the employee endorsement. What Nautilus has done, and I think what this case asks yourself, is how far can an insurance company go? Now, I'm not sure if I'm prepared to go so far that it's illusory coverage, but it's pretty darn close. I mean, if you look at the policy and the subcontractor policy, it indicates this insurance does not apply to bodily injury, property damage, or personal and advertising injury arising on a work performed by any contractors or subcontractors unless such work is being performed specifically and solely for you. It's admitted in this case, and Nautilus agrees, that the work in this case was done specifically for J or Jada. And I submit any reasonable person that looks at this endorsement that was paid extra for, $1,785, if you get rid of the double negatives, it essentially reads that the insurance does apply if the work is being done solely for you. And I believe Judge Zegel is entirely correct in applying Illinois law that this is a duty to defend case. Was there even the potential for coverage when you compare the underlying complaint to the policy? And Judge Zegel is very careful in his December 2013 summary judgment ruling, and he also revisited through a motion to reconsider where Nautilus said, an exception cannot create coverage. And if you look at Judge Zegel's January 2014 opinion, he made very clear that the exclusion was not being used to create coverage, but he indicated and he cited, I believe, the outboard Marine case, Supreme Court of Mississippi case, and also Fifth Circuit case. And they did show, and there is authority including Illinois, that you could look at an exception to an exclusion to determine what was intended by the policy. What did the policy intend? And if you look at that exception to the exclusion here, it's pretty darn clear that they intended coverage for contractors or subcontractors. And now you go back to what Nautilus says, what they've done, they've charged a separate premium for contractors and subcontractors, and they've kind of giveth, you know, coverage for that type. Now what they've done almost disingenuously is, you know, take away coverage by the employee exclusion. I think counsel should get up here and explain what type of coverage would there be for work of a subcontractor or subcontractor. You know, perhaps a mailman walking by the property, if they dropped a pail on his head, maybe he'd be covered, but then you look at the employee exclusion, and that would probably even take away coverage for a mail carrier if he's delivering mail to that property. This is not a case where a nominal. I don't understand that at all. I would think the coverage of passersby would be the most obvious explanation for this coverage. It would be, but if you read it real closely, it says an employee is any person or persons who provides services directly or indirectly to any insured regardless of where services are performed or where the bodily injury occurs. I think you can make an argument, and I suspect Nautilus would. Okay. So the mail carrier is different from just the neighbor passing by. I think maybe counsel could do it, but I think under Nautilus' interpretation how they've really, you know, posed exclusions in this case. Mr. Linden, is there any record evidence here indicating there were any kind of negotiations over employee coverage or anything of that sort? Not that I'm aware of. My client just assumed he had coverage. He went to a broker and said, I need coverage to cover any possible injuries, and thought he had it and obtained, you know, paid a separate premium for an endorsement and thought he had it. But, you know, Nautilus was pretty quick in the district court to object to any discovery going outside the underwriting, so I was somewhat limited in the discovery I was able to gather in this case. Could you address this Western casualty against Proshue case? Yes, I can. And that case does, you know, the basic proposition is an exclusion or exception cannot, you know, create coverage. And if you look, Judge Zago, I believe, cited that case and went through it. But Illinois law is clear that you have to look at the purpose of the policy and the intent of the policy. If you look at the Proshue case, I believe that involved, if I recall, faulty workmanship. And it was a commercial, you know, general commercial liability policy. And they tried to pigeonhole an exception really out of context in that case where the court said that a general commercial liability policy was never intended to cover faulty workmanship or economic loss, that it's really meant to cover more of an occurrence or a type of loss. So that case is completely different in this case. I think it's understood that the type of loss that was sustained here in the injury by, you know, Mr. Castro in the personal injury case, that is the type of loss you're talking about. So I think you have to look at that exception of exclusion and say, does that show the intent of the policy? And I think when you do that, I think it's real clear, especially when you look at Illinois law, and I don't think I have to really go into Illinois law. I know your honors have written many decisions on it. But any ambiguities, you know, are construed against the insurance company. This is a case where Nautilus did not defend under reservation rights. It did not file a deck action. That it forced the insured to do what he did, hire a lawyer and defend it. And the standard is, I think Judge Zegel indicated, you know, the deck is stacked against an insurance company in this case. That it's to be very liberally and broadly construed, and if there's any doubts or ambiguities, it has to go against Nautilus. So if the court doesn't have any other questions, I would request that the district court decision be affirmed. And thank you very much for your time. I just want to address a couple of points. Number one, counsel said that this was a case that was, quote unquote, pretty darn close to illusory. It's pretty clear in Illinois law that pretty darn close to illusory is not the standard by which you then ignore that provision. The other point and suggestion by counsel, which I'm going to take, is what did they get for the premium that was charged here? And he suggested that the primary purpose of the policy and the primary risk is injuries to employees. However, when you're doing construction work, there are a lot of other significant risks that are involved. Number one, construction defect claims that lead to property damage claims. That's obviously a big factor in creating a risk for premium purposes. Injuries to the future owner of the property that's being constructed. There's an exception in the exclusion for property for – I'm sorry. Strike that. But injuries to a future owner that could be traceable to a contractor or subcontractor would be covered. As was mentioned, injuries to passersby and, frankly, the idea that somehow a mailman would not come within that. I'm not sure I understand that, but even if you exclude mailman, anybody else, a kid that snuck onto the property and got injured because of a hole that was created by a subcontractor and is unprotected, that would be covered. So there are significant risks that fit within the premium that was charged for this policy, which, by the way, was under $4,000. So we're not talking about a policy in which there was a charge of some astronomical amount for the risk in this policy, but even disregarding that, there was clearly real risks that were covered by this policy. So there's not an illusory or a benefit of the bargain problem here. And the brochure case was very clear that an exception to an exclusion has no impact on separate exclusions, only on the exclusion that the exception is within. So for all of those reasons, I would ask that this court reverse the district court and enter judgment, finding that Nautilus has no duty to defend or indemnify JRJ in the underlying case. Thank you. Thank you, sir. Thanks to both counsel. The case is taken under advisement. The court will proceed to the fourth case. The United States.